UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRACY CONRAD SMITH,

        Petitioner,

      v.

DARRAL ADAMS,

        Respondent.

_____/

No. No. C 09-3764 PJH

**ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS**

Before the court is the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed by state prisoner, Tracy Conrad Smith ("Smith). Having reviewed the parties' papers, the record, and having carefully considered their arguments and the relevant legal authorities, the court DENIES the petition.

**BACKGROUND**

**A.    Procedural Background**

On July 20, 2006, an Alameda County jury convicted Smith of burglary of a garage, second degree robbery, and felon in possession of a firearm. The trial court subsequently found that Smith had thirteen prior convictions, including two prior prison terms and two prior serious "strike" convictions. On October 20, 2006, the court sentenced Smith to three concurrent terms of twenty-five years to life with two consecutive five-year terms based on the prior serious felony enhancements.

Smith subsequently filed a direct appeal with the state appellate courts. On June 12, 2008, the California Court of Appeal affirmed his conviction, and on August 27, 2008, the California Supreme Court denied review.

United States District Court

For the Northern District of California

1   On August 17, 2009, Smith filed a pro se petition for a writ of habeas corpus with

2   this court.  On February 3, 2010, the court dismissed Smith's petition with leave to amend,

3   noting that it contained 106 claims, many of which did not appear cognizable and most of

4   which were incomprehensible.  In March 2010, Smith retained counsel, Hilda Scheib, after

5   which the court subsequently afforded Smith several extensions of time to file his amended

6   petition.  On June 21, 2010, Smith filed his amended petition, which raised three claims,

7   two of which he had exhausted on direct appeal in state court, and a third claim, which

8   Smith conceded was unexhausted.  On July 20, 2010, the court stayed these habeas

9   proceedings to allow Smith to exhaust his claim in state court.

10   Meanwhile, on June 22, 2010, Smith's counsel filed a habeas petition on his behalf

11   with the California Court of Appeal in an effort to exhaust the third claim.  On June 23,

12   2010, the California Court of Appeal issued a postcard denial of Smith's habeas petition.

13   Smith's counsel subsequently filed a habeas petition on his behalf with the California

14   Supreme Court on September 22, 2010, which the court summarily denied on March 30,

15   2011.[1]

16   On May 11, 2011, the court reopened the case after Smith notified it that the

17   California Supreme Court had completed its review of his habeas petition.  The court

18   required Smith to supplement the record with documents related to his state habeas

19   petitions, and set a briefing schedule.  The briefing was complete with the filing of Smith's

20   December 16, 2011 traverse.

21   **B.   Factual Background**

22   Smith's conviction stems from the following facts.  On April 3, 2003, Wayne Dull's

23   Hayward, California garage was burglarized.  Dull had rented his home in Hayward, which

24   included the house, a garage, and a tool shed, for approximately fifteen years.  At the time

25   of the burglary, Dull's landlord had put the property up for sale, and Dull was in the process

26   _____

27   [1]Smith apparently also filed pro se a second habeas petition with the California Court
28   of Appeal on January 13, 2011, which the court denied on January 20, 2011.

United States District Court

For the Northern District of California

1   of packing his belongings in preparation for the move.  Because Dull was a carpenter, this

2   included many of his professional tools, which were stored in the garage and shed.

3        On the morning of April 3, 2003, Dull left his house for a job in Walnut Creek,

4   California, approximately thirty miles from home.  After work, Dull planned to drive to his

5   brother's house in Oroville, California, approximately three hours from his home, to store

6   some of his belongings in anticipation of the upcoming move.

7        Dull's daughter, Lisa, lived with Richard Viera, her then-fiancé and current husband,

8   near Dull.  Lisa would often "keep an eye on" her father's place when he went away

9   because he had previously been burglarized.  Lisa's fiancé, Richard had known Dull for

10  approximately twenty years, and also had Dull's permission to check on his property.

11       After Dull left the house that morning, Lisa drove by his house on her way to work

12  and noticed a blue Chevrolet Suburban, later confirmed to belong to Smith, parked in Dull's

13  driveway facing his house.  Because the house was for sale, Lisa did not think it was

14  unusual to see a strange car in the driveway.  However, she again noticed the same

15  vehicle parked in Dull's driveway on her way home from work late that afternoon.  The

16  vehicle had been moved, though, and was parked between Dull's garage and tool shed.

17  Lisa noticed that the back doors to the Suburban and the garage doors were both open,

18  and found it suspicious.

19       Lisa called her father to relate her story of the suspicious vehicle, and Dull told her

20  that she should check it out if it looked suspicious, and that even if his landlord was

21  showing the property, no one had permission to move any of his belongings.  Lisa advised

22  her father that she and Richard would go by and check out the property.

23       When Lisa and Richard arrived, the Suburban was still there.  After walking up to the

24  open doors of Dull's garage, they observed Smith standing on some furniture and looking

25  through books on a shelf.  Lisa couldn't identify Smith, and called out "Uncle Kent, Uncle

26  Kent, is that you?"  Smith, who apparently was playing along, responded that it was "his

27  grandpa's stuff," and identified his "grandpa" as "Ken" instead of "Kent."  At that point, Lisa

28

3

realized Smith was an intruder whom she did not know.

Lisa then stated that she was going to call the police, and she went into her father's house. The house had been ransacked, and the phone was missing. Lisa subsequently emerged from the house, planning to write down Smith's license plate number. Meanwhile, Richard stood in front of the garage, watching Smith. Smith came out of the garage, went to his Suburban, and appeared to be fumbling through something inside of the vehicle. Richard advised Smith to wait where he was for the police. Smith exited his vehicle with his hand in his jacket, pointing at Richard, and seemed more aggressive than he had prior to entering his vehicle.

Smith told Richard, "[y]ou better get back, you need to get back." Richard thought Smith might be pointing a gun at him through the jacket pocket, so he began backing away with his hands in the air as Smith approached him. Lisa, meanwhile, observed the scene and began screaming. Smith then tripped, and Richard saw a flashlight fall out of his pocket. At that point, Richard thought Smith was trying to fool him into thinking the flashlight was a gun.

Before Smith was able to stand up, Richard grabbed him, trying to contain him, and Richard and Smith struggled down Dull's steep driveway. Lisa ran down toward the street hoping to flag down a car to call the police. Smith and Richard struggled all the way until they reached the street, and Smith slipped out of his jacket and ran away. Immediately thereafter, a car stopped for Lisa, and the driver used a cell phone to call the police. Walking back up the driveway, Richard and Lisa subsequently discovered a holstered, loaded handgun near where Smith's flashlight had fallen out of his jacket, along with a knife where Richard and Smith had been struggling.

Soon after, the police apprehended Smith in a nearby yard. Dull returned home, and investigators confirmed that Smith's vehicle was loaded with Dull's tools, furniture, and possessions. The officers also found Smith's driver's license, checkbook, credit cards, and automobile insurance bill inside the vehicle, confirming that the Suburban belonged to him.

4

**ISSUES**

Smith raises the following three claims:

(1) his due process rights were violated because the evidence was insufficient to convict him of second degree robbery under California Penal Code § 211;

(2) he was deprived of his right to due process and to present his case when the trial court refused to instruct on his lesser-included offenses to robbery; and

(3) his trial counsel rendered ineffective assistance of counsel when

> (a) he failed to file a motion under *Pitchess v. Superior Court*, 11 Cal.3d 531 (1974), for discovery of law enforcement's personnel records; and

> (b) when he failed to object to the review and recording of a phone call Smith made from jail.

**STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407–09, (2000), while the second prong applies to decisions based on factual determinations, *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412–13.  A state court decision is an "unreasonable

5

United States District Court

For the Northern District of California

1   application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it

2   correctly identifies the governing legal principle from the Supreme Court's decisions but

3   "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The

4   federal court on habeas review may not issue the writ "simply because that court concludes

5   in its independent judgment that the relevant state-court decision applied clearly

6   established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must

7   be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

8        Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

9   determination will not be overturned on factual grounds unless objectively unreasonable in

10  light of the evidence presented in the state-court proceeding." *Miller–El*, 537 U.S. at 340.

11  Review under § 2254(d)(1) is limited to the record that was before the state court that

12  adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

13  When a federal claim has been presented to a state court and the state court has denied

14  relief, it may be presumed that the state court adjudicated the claim on the merits in the

15  absence of any indication or state-law procedural principles to the contrary. *Harrington v.*

16  *Richter*, 131 S.Ct. 770, 784–85 (2011).  When there is no reasoned opinion from the

17  highest state court to consider the petitioner's claims, the court looks to the last reasoned

18  opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 801–06 (1991).

19                                        **DISCUSSION**

20  **I.    Sufficiency of the Evidence**

21       Smith contends that his due process rights were violated because the evidence was

22  insufficient to convict him of second degree robbery under California Penal Code § 211,

23  which provides that "[r]obbery is the felonious taking of personal property in the possession

24  of another, from his person or immediate presence, and against his will, accomplished by

25  means of force or fear." Cal. Penal Code § 211.  Smith argues, as he did on direct appeal

26  before the state appellate courts, that there was insufficient evidence that Richard had

27  ownership or constructive possession of Dull's property, and that the property was not

28

United States District Court

For the Northern District of California

1    taken from the immediate presence of a person with the requisite ownership or possession.

2         The California Court of Appeal rejected Smith's arguments, holding that the

3    evidence was sufficient.  First, the court noted that under California law, "[c]onstructive

4    possession depends upon a special relationship with the owner of the property, not upon

5    the motives of a person seeking to recover possession from a thief or burglar."  *See Sykes*

6    *v. Superior Court*, 30 Cal.App.4th 479, 484 (Cal. Ct. App. 1994).  It determined that Richard

7    possessed the requisite special relationship with Dull to be deemed in constructive

8    possession of the property at issue.  Specifically, the court found that Richard "was enlisted

9    - either directly at Dull's request or upon being deputized by Dull's daughter, Lisa – to

10   investigate and secure Dull's property."  It found that Dull's conversation with his daughter,

11   Lisa, indicated that "both Lisa and Richard were 'welcome' to take care of his property."

12   The court further noted that "Richard's sole purpose in being on the premises and standing

13   guard while Lisa called the police was to protect Dull's property."  *See People v. Bekele*, 33

14   Cal.App.4th 1457 (Cal. Ct. App. 1995), *overruled on other grounds by People v. Rodriguez*

15   20 Cal.4th 1, 13–14 (Cal. Sup. Ct. 1999).  Accordingly, the court distinguished Richard's

16   actions from those of a "Good Samaritan," who is not deemed in constructive possession of

17   suspect property under California robbery law.

18        Second, the state court noted that under California law, "the 'immediate presence'

19   element of robbery can occur when the victim and thief confront each other in a struggle

20   over the stolen property after the perpetrator initially gained possession of it."  *See People*

21   *v. Gomez*, 43 Cal.4th 249 (Cal. Sup. Ct. 2008). The court noted that the *Gomez* court had

22   held that "[i]f the aggravating factors are in play at any time during the period from caption

23   through asportation, the defendant has engaged in conduct that elevates the crime from

24   simple larceny to robbery."  *Id.* at 258.

25        Smith makes identical arguments before this court.  He argues that under California

26   law, the evidence was insufficient to convict him of robbery because Richard had no

27   possessory interest in the property taken, and because the property was not taken from

28

                                        7

United States District Court

For the Northern District of California

1  Richard's immediate presence.  As a result, Smith argues that his due process rights were

2  violated, citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

3      The Due Process Clause "protects the accused against conviction except upon proof

4  beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

5  charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the

6  evidence in support of his state conviction cannot be fairly characterized as sufficient to

7  have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a

8  constitutional claim, which, if proven, entitles him to federal habeas relief.  *See Jackson*,

9  443 at 321, 324.

10      A federal court reviewing collaterally a state court conviction does not determine

11  whether it is satisfied that the evidence established guilt beyond a reasonable doubt.

12  *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992).  The federal court "determines only

13  whether, 'after viewing the evidence in the light most favorable to the prosecution, any

14  rational trier of fact could have found the essential elements of the crime beyond a

15  reasonable doubt.'"  *Id.* (quoting *Jackson*, 443 U.S. at 319).  Only if no rational trier of fact

16  could have found proof of guilt beyond a reasonable doubt has there been a due process

17  violation.  *Jackson*, 443 U.S. at 324.

18      A federal habeas court applies the standards of *Jackson* with an additional layer of

19  deference.  *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).  Generally, a federal

20  habeas court must ask whether the operative state court decision reflected an

21  unreasonable application of *Jackson* to the facts of the case.  *Id.* at 1275 (quoting 28

22  U.S.C. § 2254(d)). Thus, if the state court affirms a conviction under *Jackson*, the federal

23  court must apply § 2254(d)(1) and decide whether the state court's application of *Jackson*

24  was objectively unreasonable.  *See McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010). To

25  grant relief, therefore, a federal habeas court must conclude that "the state court's

26  determination that a rational jury could have found that there was sufficient evidence of

27  guilt, i.e., that each required element was proven beyond a reasonable doubt, was

28

United States District Court

For the Northern District of California

1   objectively unreasonable." *Boyer v. Belleque*, 659 F.3d 957, 965 (9th Cir. 2011).

2       Moreover, the *Jackson* standard must be applied with explicit reference to the

3   substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at

4   324 n.16; *see, e.g., Boyer*, 659 F.3d at 967-68 (concluding it was not unreasonable, in light

5   of Oregon case law, for Oregon court to conclude that a rational jury could find beyond a

6   reasonable doubt that petitioner intended to kill his victim based on proof that he anally

7   penetrated several victims with knowledge that he could infect them with AIDS).

8       Smith's arguments on this issue amount to little more than an assertion that the

9   state courts erred regarding their interpretation of California law.  The Supreme Court has

10  repeatedly held that federal habeas relief is unavailable for violations of state law or for

11  alleged error in the interpretation or application of state law.  *See Swarthout v. Cooke*, 131

12  S. Ct. 859, 861-62 (2011); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Peltier v. Wright*,

13  15 F.3d 860, 861-62 (9th Cir. 1994); *see, e.g., Little v. Crawford*, 449 F.3d 1075, 1082 (9th

14  Cir. 2006) (claim that state supreme court misapplied state law or departed from its earlier

15  decisions does not provide a ground for habeas relief).  Federal courts generally are bound

16  by a state court's construction of state laws, except when it appears that its interpretation is

17  an obvious subterfuge to evade the consideration of a federal issue.  *See Melugin v.*

18  *Hames*, 38 F.3d 1478, 1487 (9th Cir. 1994) (federal court bound by Alaska Court of

19  Appeals' interpretation and decision that state statute was properly applied to petitioner's

20  conduct).

21      Here, there has been no such subterfuge, and Smith has failed entirely to

22  demonstrate that the California Court of Appeal's thorough and reasoned opinion resulted

23  in a decision that was contrary to, or involved an unreasonable application of, clearly

24  established Federal law, as determined by the Supreme Court of the United States; or

25  resulted in a decision that was based on an unreasonable determination of the facts in light

26  of the evidence presented in the state court proceeding.

27      For these reasons, this claim fails.

28

**United States District Court**
For the Northern District of California

**II.     Failure to Instruct on Lesser-Included Offenses to Robbery**

Smith also argues that his due process rights were violated when the trial court failed to instruct on lesser-included offenses to robbery.

At trial, Smith's trial counsel requested a jury instruction on grand theft and petty theft as lesser-included offenses to robbery. The court denied the request, concluding that the evidence did not support the instructions. It found that "there [was] absolutely no evidence to contradict the threat of force or use of force to complete the taking of the property from the various buildings." R.T. 4:591.

Smith notes that under California law, theft is a lesser-included offense of robbery, *People v. Valdez*, 32 Cal.4th 73, 110 (Cal. Sup. Ct. 2004), and that the difference between robbery and theft is that robbery requires that the property be taken by force or fear and from the victim or in the victim's immediate presence. *See People v. Gomez*, 43 Cal.4th 249, 255 (Cal. Sup. Ct. 2008). Smith then makes essentially the same arguments that he has made in conjunction with the due process claim discussed above, in contending that he was entitled to the theft instructions. He asserts that Richard may have been acting simply as a "Good Samaritan" and thus did not constructively possess Dull's property. He also argues there was substantial evidence that he did not take the property through fear or force. In support, he notes that Richard observed a flashlight fall from his pocket - not a gun -- and also asserts that he (Smith) was smaller than Richard. He contends that had the jury been properly instructed, it may have convicted him of theft only. He further contends that the court's failure to provide the jury with his requested lesser included instructions prevented him from presenting his theory of the case.

The state counters that Smith was not entitled to the theft instruction because he never disputed that he used force and fear in committing the offense - the distinguishing element between theft and robbery. Accordingly, the state argues that there was no basis for the court to instruct on the lesser offense.

The California Court of Appeal affirmed on this issue, finding that "the evidence was

1    not conflicting" on whether Richard was a proper victim and whether there was a taking of

2    property from the immediate presence of a proper victim.  The court thus held that

3    evidence that Smith was guilty only of a lesser-included theft offense was not "substantial

4    enough to merit the jury's consideration."

5          A state trial court's refusal to give an instruction does not alone raise a ground

6    cognizable in federal habeas corpus proceedings.  *See Dunckhurst v. Deeds*, 859 F.2d

7    110, 114 (9th Cir. 1988).  The error must so infect the trial that the defendant was deprived

8    of the fair trial guaranteed by the Fourteenth Amendment.  *See id.*

9          Due process requires that "'criminal defendants be afforded a meaningful

10   opportunity to present a complete defense.'"  *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir.

11   2006) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).  Therefore, a criminal

12   defendant is entitled to adequate instructions on the defense theory of the case.  *See*

13   *Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000) (error to deny defendant's request for

14   instruction on simple kidnaping where such instruction was supported by the evidence).

15         Due process does not require that an instruction be given unless the evidence

16   supports it.  *See Hopper v. Evans*, 456 U.S. 605, 611 (1982); *Menendez v. Terhune*, 422

17   F.3d 1012, 1029 (9th Cir. 2005).  Whether a constitutional violation has occurred will

18   depend upon the evidence in the case and the overall instructions given to the jury.  *See*

19   *Duckett*, 67 F.3d at 745.  An examination of the record is required to see precisely what

20   was given and what was refused and whether the given instructions adequately embodied

21   the defendant's theory.  *See United States v. Tsinnijinnie*, 601 F.2d 1035, 1040 (9th Cir.

22   1979).  In other words, it allows a determination of whether what was given was so

23   prejudicial as to infect the entire trial and so deny due process.  *See id.*

24         The failure of a state trial court to instruct on lesser-included offenses in a non-

25   capital case does not present a federal constitutional claim.  *See Solis v. Garcia,* 219 F.3d

26   922, 929 (9th Cir. 2000); *Windham v. Merkle*, 163 F.3d 1092, 1105-06 (9th Cir. 1998).  An

27   exception to this general rule may be justified in some instances, based upon a defendant's

28

United States District Court

For the Northern District of California

1    constitutional right to receive adequate jury instructions on his theory of the case.  *Solis*,

2    219 F.3d at 929.  However, to fall under such an exception, there must be substantial

3    evidence to support a finding on the lesser offense within the substantive parameters of

4    state law.  *Id.*

5         Here, for the reasons set out in the court of appeal's opinion, there was not

6    substantial evidence to support a finding on the lesser theft offense within the substantive

7    parameters of state law.  *See Menendez*, 422 F.3d at 1029 (affording presumption of

8    correctness to state court determination that evidence does not support a lesser offense

9    instruction).  As determined by the court of appeal, there was nothing substantial in the

10   evidence at Smith's trial which would have suggested Richard was not a proper victim or

11   that the taking was not from the immediate presence of a victim.  Accordingly, there was no

12   constitutional error in the omission of the theft instructions, and the state court's decision

13   was not contrary to or an unreasonable application of clearly established federal law.  *See*

14   *Solis*, 219 F.3d at 929–30.

15   **III.    Ineffective Assistance of Counsel**

16        In his final claim, Smith argues that his trial counsel rendered ineffective assistance

17   of counsel when (1) he failed to file a motion under *Pitchess v. Superior Court*, 11 Cal.3d

18   531 (Cal. Sup. Ct. 1974) for discovery of law enforcement's personnel records; and (2)

19   when he failed to object to the review and recording of a phone call Smith made from jail.

20   The court addresses both sub-claims in turn.

21        **a.    Failure to File a *Pitchess* Motion**

22        First, Smith argues that his counsel should have filed a *Pitchess* motion for

23   discovery of the responding law enforcement officers' personnel records in order to

24   investigate whether the officers lied about the presence of weapons on the driveway at the

25   scene and/or tampered with evidence at the scene.  He notes that a holstered handgun, a

26   large ornamental knife, and a small flashlight, originally from Dull's residence, were

27   discovered on the driveway after Smith fled the scene.

28

**United States District Court**
For the Northern District of California

1    Smith argues that police misconduct was plausible, and suggests that the weapons

2   found at the scene were planted by the officers "to create the illusion that he had dropped

3   them and to allow for additional, more severe charges and enhancements."  He notes that

4   at the time Richard wrestled with him, Richard admitted he did not feel the gun or the knife

5   on Smith's person.  Smith further suggests that he could not have concealed the knife on

6   his own person because it would have injured him in the struggle with Richard.  Smith

7   contends that the officers' prior records may have revealed previous instances of

8   misconduct.

9    The state responds by noting that Richard and Lisa observed the gun and the knife

10   in the driveway *before* law enforcement arrived, and notes that there was no evidence that

11   the weapons were discovered *after* law enforcement arrived, dispelling any notion that it

12   was law enforcement who planted the weapon.  Thus, the state argues that there was no

13   reason for counsel to move for discovery of the personnel records.

14    The state appellate courts issued summary postcard denials on the claim in state

15   court habeas proceedings.  That, however, does not prevent this Court from affording the

16   implied rejection of the claim the deference required by § 2254(d). *See Harrington*, 131

17   S.Ct. at 784–85 ("When a federal claim has been presented to a state court and the state

18   court has denied relief, it may be presumed that the state court adjudicated the claim on

19   the merits in the absence of any indication or state-law procedural principles to the

20   contrary.").

21    A claim of ineffective assistance of counsel is cognizable as a claim of denial of the

22   Sixth Amendment right to counsel, which guarantees not only assistance, but effective

23   assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The

24   benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so

25   undermined the proper functioning of the adversarial process that the trial cannot be relied

26   upon as having produced a just result.  *Id.*

27    In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner

28

United States District Court

For the Northern District of California

1    must establish two things.  First, he must establish that counsel's performance was

2    deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing

3    professional norms.  *Strickland*, 466 U.S. at 687-88.  Second, he must establish that he

4    was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable

5    probability that, but for counsel's unprofessional errors, the result of the proceeding would

6    have been different."  *Id.* at 694.  A reasonable probability is a probability sufficient to

7    undermine confidence in the outcome.  *Id.*

8         The *Strickland* framework for analyzing ineffective assistance of counsel claims is

9    considered to be "clearly established Federal law, as determined by the Supreme Court of

10   the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  *See Cullen,*131 S. Ct.

11   at 1403.  A "doubly" deferential judicial review is appropriate in analyzing ineffective

12   assistance of counsel claims under § 2254.  *See id.* at 1410-11; *Harrington*, 131 S. Ct. at

13   788 (same); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011) (same).  The general rule of

14   *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the

15   state courts greater leeway in reasonably applying that rule, which in turn "translates to a

16   narrower range of decisions that are objectively unreasonable under AEDPA."  *Cheney v.*

17   *Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S.

18   652, 664 (2004)).  When § 2254(d) applies, "the question is not whether counsel's actions

19   were reasonable.  The question is whether there is any reasonable argument that counsel

20   satisfied *Strickland*'s deferential standard."  *Harrington*, 131 S. Ct. at 788.

21        To demonstrate deficient performance, a petitioner is required to show that counsel

22   made errors so serious that counsel was not functioning as the "counsel" guaranteed by

23   the Sixth Amendment.  *See Strickland*, 466 U.S. at 687.  Here, because there is absolutely

24   no evidence to suggest that law enforcement planted the weapons at the scene, counsel's

25   failure to file a *Pitchess* motion on this basis cannot be deemed deficient under *Strickland*.

26   Accordingly, the state court's summary denial of this sub-claim was neither contrary to, nor

27   involved an unreasonable application of, clearly established Federal law, as determined by

28

1    the Supreme Court of the United States.

2          **b.    Failure to Object to Recordings**

3          At trial, the prosecution introduced a recording of a jailhouse call Smith made to a

4    friend, Cindy DeBernardi.  During that call, DeBarnardi asked Smith, "the gun that fell out of

5    your pocket was in a holster," to which Smith responded, "yeah, yeah."  The prosecution

6    argued that the conversation was relevant to both the robbery and residential burglary

7    charges.  Initially, the trial court found the recording of minimal probative value, and

8    excluded the call.  However, following the defense case, the trial court reconsidered and

9    found the recording probative in light of defense witnesses' alibi testimony.

10         Smith argues that even though the recording was permissible under state law, it may

11   have violated federal law, namely Title III of the Omnibus Crime Control and Safe Streets

12   Act.  *See* 18 U.S.C. § 2510.  Smith contends that his counsel's failure to object on federal

13   law grounds constituted ineffective assistance of counsel.

14         The state argues that under the circumstances of Smith's case, to the extent that

15   Title III applied, its exceptions to the requirement that recordings be authorized by the court

16   applied here.  First, it contends that Smith implicitly consented to interception of his

17   jailhouse phone calls because he received notice upon his entry to the jail that his calls

18   were monitored and recorded, there was a notice on the wall above the phone informing

19   him of this fact, and there was a prerecorded message on the jail phone advising him of

20   this fact.  Second, the state contends that the calls were intercepted by investigative and

21   law enforcement officers acting in the course of their duties, thus satisfying the "law

22   enforcement exception" to Title III.

23         Smith failed to address the state's arguments in his traverse.

24         Again, the court finds Smith's claim that his counsel should have objected to the

25   introduction of the recordings as violative under Title III without merit.  The taping of inmate

26   phone calls is not prohibited by Title III of the Omnibus Crime Control and Safe Streets Act

27   of 1968, which forbids the intentional use of any "electronic, mechanical, or other device to

28

United States District Court
For the Northern District of California

1    intercept any oral communication." *See* § 2511(1)(b); s*ee also United States v. Van Poyck*,

2    77 F.3d 285, 291 (9th Cir. 1996).  That is because the interception of calls by prison

3    officials in the ordinary course of their duties falls under the "law enforcement" exception to

4    Title III.  *See id.* at 291-292.  Accordingly, it was not deficient under *Strickland* for Smith's

5    trial counsel to fail to object to the introduction of the recordings on this basis.  For this

6    reason, the state court's summary denial of this sub-claim was neither contrary to, nor

7    involved an unreasonable application of, clearly established Federal law, as determined by

8    the Supreme Court of the United States.

9                                              **CONCLUSION**

10          For the foregoing reasons, Smith's petition for a writ of habeas corpus is **DENIED**.

11   The clerk shall close the file.

12                              **CERTIFICATE OF APPEALABILITY**

13          To obtain a COA, Smith must make "a substantial showing of the denial of a

14   constitutional right."  28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the

15   constitutional claims on the merits, the showing required to satisfy § 2253(c) is

16   straightforward.  "The petitioner must demonstrate that reasonable jurists would find the

17   district court's assessment of the constitutional claims debatable or wrong."  *Slack v.*

18   *McDaniel*, 529 U.S. 473, 484 (2000).  Section 2253(c)(3) requires a court granting a

19   COA to indicate which issues satisfy the COA standard.  Here, the court finds that none of

20   the issues presented by Smith in his petition meet the above standard and accordingly

21   DENIES the COA.  *See generally Miller-El*, 537 U.S. at 322.

22

23   **IT IS SO ORDERED.**

24   Dated: April 6, 2012

25                                              _____

26                                              PHYLLIS J. HAMILTON
                                                United States District Judge

27

28